May Term, 1851.

TOMLINSON
v.
LINDLEY.

---

TOMLINSON v. LINDLEY.

The complainant filed a bill of discovery, alleging that he is sued by the defendant for failing to account for certain beef placed in his hands, as commission merchant, for sale. The bill states that said beef was duly accounted for; that two accounts were rendered; that the first was rendered by P., the complainant's clerk, who is deceased, in which it is stated, in a memorandum at the bottom of said account, that a number of barrels yet remained on hands for sale, which number, with those sold, exceeded all that the defendant had, and that the action was brought for the excess so erroneously stated in said receipt. The bill also alleges that the beef was packed and freighted by G., and the boat was steered by Y. The complainant states that he does not know any witness by whom he can prove the exact amount of beef which the defendant deposited for sale, and calls upon him to answer as to the several facts stated in the bill. The defendant, in his answer, says, he cannot admit the receipt signed by P. to be erroneous; but believes that the account so rendered states the correct amount of beef deposited for sale, and that he has more confidence in the correctness of said receipt than in his own recollection, and that it contains the best information he can give. He admits that G. freighted the beef, and that Y. steered the boat. Exceptions for insufficiency and impertinence were sustained, and the defendant failing to answer further, it was ordered that such parts of the bill as were not sufficiently answered should be taken as confessed, &c. Held, that the answer was evasive.

APPEAL from the Vigo Circuit Court.

SMITH, J.—Lindley filed a bill of discovery, alleging that he is sued by Tomlinson for failing to account for certain beef, placed by the latter in the hands of the complainant and one Russell, commission merchants at New Orleans, for sale. The bill states that said beef was duly

Monday,
June 2.

May Term,
1851.

TOMLINSON
v.
LINDLEY.

accounted for; but that accounts were rendered at two several times, and that the first account of sales was made out by one *Plummer*, who is since deceased, in which it was stated, in a memorandum at the bottom of said account, that a number of barrels and half barrels yet remained on hand for sale, which number, with those already sold, exceeded all that the said *Tomlinson* had; and that the action was brought for the excess so erroneously stated to have been received in the said receipt or memorandum of *Plummer*. The bill also alleges that all the beef deposited with the complainant and *Russell* by *Tomlinson*, was packed and freighted by one *Gronendike*, and that the boat on which it was shipped to *New Orleans* was steered by one *Youmans*.

The complainant states that he does not know any witness by whom he can prove the exact number of packages of beef which the said *Tomlinson* deposited for sale with *Lindley* and *Russell*, and calls upon *Tomlinson* to answer and state how many barrels and half barrels he did deposit with them; at what time the said beef was deposited; who freighted the same, if it was not freighted by *Gronendike;* whether he deposited any other beef with *Lindley* and *Russell*, and, if he did, from whom he obtained it, who freighted it, and who steered the boat containing it to *New Orleans*.

*Tomlinson* filed an answer, to which exceptions were sustained, and he then filed a second answer.

In this answer he admits a suit at law, but says he cannot admit the receipt signed by *Plummer* to be erroneous. He alleges that mistakes are frequently made by captains of flat-boats in receiving freight, but that such mistakes are not so likely to be made by commission merchants at *New Orleans*, as they are better accountants, have more accommodations for doing business, and are not so much hurried.

In answer to the charge that all his beef was duly accounted for, he says he cannot admit that it was; but he believes the account of sales rendered for *Lindley* and *Russell* by *Plummer*, contains the true account of the num-

ber of barrels and half barrels deposited with them for sale.

This account, which he makes an exhibit, shows that several parcels of beef, &c., were sold at different times, on account of *Tomlinson*, and at the foot there is a memorandum in these words:

"Left in our hands one bbl. prime, one bbl. cargo, and one hundred and fifty-three half barrels mess beef, one barrel tongues. *New Orleans, Apr.* 29th, 1841.

"*Lindley* and *Russell*, per *W. Plummer.*"

The respondent says he has more confidence in the correctness of said receipt and account of sales than in his own recollection unaided by them; that they contain the best information in his power to give, and he cannot answer to his own satisfaction without them; that he knows of no errors or mistakes in them, and he, therefore, denies that said beef was duly accounted for, and says there remains to be accounted for 16 half barrels of mess beef, 1 barrel of tongues, and 1 barrel of cargo beef, worth 124 dollars. He says he does not recollect the time at which the said beef was deposited, but believes it was at the time mentioned in the account; that it was freighted by *Gronendike*, and the boat on which it was conveyed to *New Orleans* was steered by *Youmans.*

Exceptions for insufficiency and impertinence were again taken and sustained, and the defendant was required to file a sufficient answer on or before the calling of the case at the next term.

At the next term, the defendant having failed to answer further, it was ordered that such parts of the bill of complaint as were not sufficiently answered should be taken as confessed; and it was decreed that it should be taken as confessed and true, that all the beef of the said *Tomlinson*, deposited with the complainant and the said *Russell* for sale, was packed and freighted by *Gronendike;* that the boat which carried the same to *New Orleans* was steered by *Youmans;* and that the memorandum of *Lindley* and *Russell's* clerk attached to the account of sales furnished *Tomlinson*, was for the beef so freighted by *Gronen-*

*dike* on the boat of *Youmans*, and not for any other or different beef.

From this decree *Tomlinson* appeals.

We think the answer is evasive, and that exceptions might properly be sustained to it, upon the ground that it avoids making any statement of the quantity of beef delivered to the complainant and his partner from the knowledge, information, or belief of the respondent, except such as he derives from the account of sales and the memorandum or receipt furnished him by *Plummer*. The bill is filed for the express purpose of obtaining evidence, by means of the respondent's own knowledge, that there was a mistake or error in that memorandum, and an answer insisting upon the memorandum as the best source of information, and that upon which the respondent himself most relies, is clearly an evasion of the charges and interrogatories of the complainant.

But the matters which the Court decree to be taken as confessed are, substantially, admitted in the answer. The answer expressly admits that all the beef of the respondent deposited for sale with *Lindley* and *Russell*, was packed and freighted by *Gronendike*, and was conveyed to *New Orleans* upon the boat steered by *Youmans*. It was, therefore, an obvious and necessary conclusion that, as *Tomlinson* deposited no other beef with *Lindley* and *Russell*, the memorandum attached to the account of sales furnished by *Plummer*, their clerk, to *Tomlinson*, must have had reference to the beef so freighted and carried and no other.

Perhaps the decree was unnecessary, as all the evidence it establishes, is furnished by the admissions in the answers, but as it can make no difference to the respondent, whether his admissions are read from the decree or answer, upon the trial of the suit at law, we can perceive no good reason for disturbing the decision of the Circuit Court.

*Per Curiam.*—The decree is affirmed with costs.

*C. W. Barbour*, for the appellant.

*J. P. Usher*, for the appellee.